José Fernández Rodríguez, Plaintiff and Appellant, v. Rafael Buscaglia, Treasurer of Puerto Rico, Defendant and Appellee.

No. 8540. Argued May 20, 1942.—Decided June 18, 1942.

*E. Martínez Rivera* for appellant.  *George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

José Fernández Rodríguez filed a petition in the district court for an injunction to restrain the Treasurer of Puerto Rico from collecting certain income taxes.   Fernández appealed from an order denying a preliminary injunction.

Fernández alleges that he paid his income tax for 1940, amounting to $139.93, in March, 1941.   Thereafter Acts Nos. 31 and 159, Laws of Puerto Rico, 1941, were passed.   These Acts purport to amend retroactively, as of January 1, 1940, Act No. 74, Laws of Puerto Rico, 1925, known as the Income Tax Act of 1924.   Fernández alleges that on January 15, 1942, the Treasurer demanded that he pay an additional sum of $367.90 as income tax for 1940.   The Treasurer, he alleges, arrives at this figure (*a*) by refusing to recognize as deductible credits on his 1940 income tax return (1) the sum of $870.86 representing partnership profits, and (2) the sum of $2,500.00 as a personal exemption; and (*b*) by calculating his tax at the rate of 8% because he was a resident alien. The Treasurer's position, according to the petition, is that the Acts of 1941 provide for the elimination, retroactively as of January 1, 1940, of these credits, and for an 8% tax on resident aliens.   The petitioner alleges that if he were a citizen, his tax would be calculated under the Acts of 1941 at the rate of 3% on the first $3,000.00 of his net income and 5% on the next $2,000.00.

The gravamen of the petition is that the Acts of 1941 are invalid insofar as they apply retroactively to income earned in 1940 and insofar as they require a resident alien to pay income tax at a higher rate than a resident citizen.

We are concerned here solely with the refusal of the lower court to grant a preliminary injunction.   Section 678,

Code of Civil Procedure, 1933 ed., provides that "An injunction cannot be granted: . . 7. To prevent the levying or collection of any tax levied by the laws of the United States or of Puerto Rico." ·

In view of this statute, we have carefully restricted injunctive relief to those cases in which it clearly appears not only that the tax is unlawful, but also that either (a) the taxpayer does not have an adequate remedy at law, or (b) the tax would cause him irreparable injury, or (c) would give rise to a multiplicity of suits. *The Texas Co.* v. *Treasurer,* 50 P.R.R. 415, 435; *E. Solé & Co., S. en C.* v. *Sancho, Treas.,* 53 P.R.R. 725, 735; *Plaza Provision Co., Inc.* v. *Benítez, City Mgr.,* 51 P.R.R. 636; *Los Diablos* v. *Treasurer,* 54 P.R.R. 626; *Miller* v. *Nut Margarine Co.,* 284 U. S. 498; *Bailey* v. *George,* 259 U. S. 16; *Hill* v. *Wallace,* 259 U.S. 44, 62; Enjoining the Assessment and Collection of Federal Taxes Despite Statutory Prohibition, 49 Harv. L. R. 109.

The only allegations made by the petitioner to bring himself within the rule laid down by the above cases are the following:

"10. That if the defendant should carry out his threats to attach the property of the plaintiff to collect the amount of the alleged additional tax determined in the stated illegal manner, the plaintiff would then be arbitrarily deprived of his property without due process of law and would suffer irreparable damages which the plaintiff estimates in a sum in excess of $500.00.

"11. That with the exception of the instant petition for injunction, plaintiff lacks any other speedy and adequate remedy at law to establish his constitutional rights claimed herein, because, although the plaintiff could resort to the Court of Tax Appeals on appeal, said court is merely an administrative board, with quasi judicial powers, and lacks authority to pass upon the plaintiff's constitutional rights and furthermore, such a proceeding would be academic since in order to avail himself of the same, plaintiff would have previously to guarantee payment to the defendant of the additional tax claimed."

As this court pointed out in *E. Solé & Co., S. en C.* v. *Sancho, Treas., supra,* it is not sufficient merely to state in the petition the conclusion that the enforcement of the tax will result in irreparable injury. Specific facts must be alleged from which the court can reasonably find that irreparable damage can be prevented only by injunctive relief. This the petitioner has obviously failed to do in allegation 10.

■ The allegation found elsewhere in the petition that the Treasurer threatens to attach and to sell at public auction the petitioner's property to collect the said sum is not sufficient in itself to make out a case of irreparable injury. Even if the petitioner had alleged, for example, that collection of the tax would result in a complete destruction of his business, he would be required to make a detailed showing. "In the circumstances, the bare statement that if respondents were not enjoined plaintiff's business would be destroyed, is not a sufficient averment as to irreparable injury." *Barceló Marques & Co.* v. *Treasurer,* 55 P.R.R. 277, 281.

In contrast, the petitioner here simply alleges that he estimates his "irreparable damages" would be "in a sum in excess of $500.00." In the *Solé* case, in which the equities were considerably greater than in the case at bar, we stated at page 738 that "The enforced collection of the $872.52 with penalties and costs would not have caused irreparable injury."

■■ Allegation 11 makes two contentions. The first is that the petitioner's remedy at law is not adequate because the Court of Tax Appeals lacks the power to decide constitutional questions. Whether the Board of Tax Appeals of the Federal Government has such power does not seem to have been finally settled by the Supreme Court of the United States. In *Commissioner of Internal Rev.* v. *Independent L. Ins. Co.,* 67 F. (2d) 470 (reversed on other grounds in 292 U. S. 371), the Circuit Court of Appeals for the Sixth Circuit said at page 471: "The court is not concerned with whether the Board of Tax Appeals was authorized to pass upon the constitutionality of these enactments. A decision by us upon that

question would not decide this case." However, the Board itself has undertaken to exercise such power. *Independent Life Insurance Co. of America* v. *Commissioner of Internal Revenue,* 17 B.T.A. 757; *Rita O'Shaughnessy, Executrix* v. *Commissioner of Internal Revenue,* 21 B.T.A. 1046; *West Town State Bank* v. *Commissioner of Internal Revenue,* 32: B.T.A. 531. Paul and Mertens, Law of Federal Income Taxation, Vol. 5, Section 43.16, page 132, discusses this question as follows:

*"Jurisdiction as to Constitutional Questions.* The jurisdiction of the Board to pass upon constitutional questions seriously doubted at, one time, seems to be firmly established, though there remains some doubt. The present position of the Board is that the unconstitutionality of any provision of the tax law must clearly appear, before the Board, as part of the executive branch of the Government, would be justified in holding that it should not be enforced. If after consideration there remains a substantial doubt, the law should be followed until the doubt is dispelled by a court decision."

We find it unnecessary to determine in this case, at least at its present stage, whether or not the Court of Tax Appeals has the power to decide constitutional questions. Constitutional questions will be finally decided by this court,. whether the Court of Tax Appeals fails to pass on them or whether that Court passes on them and decides them either for or against the taxpayer. Presumably, the taxpayer will be permitted by the Court of Tax Appeals to adduce whatever underlying facts are necessary to raise these constitutional questions. The question of whether or not the Court of Tax Appeals has the power to decide constitutional questions therefore does not affect the adequacy of the remedy in the Court of Tax Appeals. Certainly it is not sufficient in itself to sanction the attempt to bypass the established procedure by resorting to the extraordinary remedy of injunction.

■ The second contention found in allegation 11 is that to require a taxpayer "previously to guarantee payment" of the additional tax before he can resort to the Court of Tax

Appeals would make the proceeding in that court academic. We find nothing in the petitioner's brief on this point. Apparently, the objection is to the requirement that the proceeding in the Court of Tax Appeals be accompanied in appropriate cases by a bond. The shortest answer to this argument is that even in the instant case a preliminary injunction, if granted, would be conditioned on the posting of a bond to assure collection of the additional tax in the event the Treasurer ultimately prevailed.

█ Although there is no such allegation in his petition, Fernández argues in his brief that injunctive relief is necessary in this case to prevent a multiplicity of suits. It can scarcely be contended that the retroactive feature of the statute produces such a result. Whether valid or invalid, the retroactive increase of the income tax rate creates one claim for a stipulated sum increasing the tax for one year. This can clearly be disposed of in one suit.

There is likewise no substance to the argument that the petitioner would be engaged in a multiplicity of suits because he would have to sue every year to recover the excess levied on him as a resident alien. If this court should hold in a proper proceeding that to tax the income of resident aliens at a rate higher than the tax on resident citizens is invalid, we cannot assume that the treasurer would nevertheless persist thereafter in attempting each year to collect income taxes from resident aliens at the higher rate. We stated in *Benítez v. Treasurer,* 54 P.R.R. 712, 730, that "If the suit were not decided within the fiscal year, it would suffice to repeat the payment under protest when the time came and again file suit which would be decided by the decision of the first one. That is not the multiplicity of suits to which the jurisprudence refers."

█ Sections 41 and 43 of Title 8, U.S.C.A., cited by the petitioner, have no application here. These statutes protect aliens in their civil rights. They were not intended to confer

on aliens a procedural remedy in the courts which has been validly denied to citizens.

■ There remains only the point which the petitioner raises by the following statement in his brief:

"The lower court in the order appealed from held that the plaintiff has available for review of the decision of the Treasurer the appeal which the law authorizes to be taken to the Court of Tax Appeals, created by Act No. 172 of 1941. However, we respectfully submit that such an appeal does not afford the plaintiff an immediate or ample remedy. The income tax law expressly confines such remedy to the revision of deficiencies determined by the Treasurer after investigation, and no deficiency so determined is involved herein; the remedy cannot be exercised freely and without restraint (§57, Act No. 23 of 1941, Special Session); . . ."

This amounts to a contention for the first time that the petitioner has no adequate remedy at law. There was no such allegation in the petition, nor apparently did the petitioner argue this question in the lower court. There are no allegations in the petition which would enable us to pass on this question, as the petition does not set forth the procedure the Treasurer used to demand the payment of the additional taxes. The petitioner does not implement his argument in his brief. He simply asserts baldly that "The income tax law expressly confines such remedy to the revision of deficiencies determined by the Treasurer after investigation, and no deficiency so determined is involved herein; . . .". In view of the petitioner's failure either to allege the procedure followed by the Treasurer in attempting to collect these taxes or to make a detailed argument, decision of this important question must be postponed. To support his position, the petitioner cites only §6 of Act No. 23, Laws of Puerto Rico, 1941, Special Session, amending §57 of Act No. 74, Laws of Puerto Rico, 1925. When the question is properly raised, we shall be required also to take into consideration §4 of Act No. 172, Laws of Puerto Rico, 1941.

■ We are not to be understood as foreclosing the petitioner from again raising these or other questions after answer and a hearing on the merits. The issue before us is narrow. We hold only that the district court did not abuse its discretion in refusing to grant a motion for a preliminary injunction, based solely on the allegations of the petition, pending a final hearing. *Rivera* v. *Tugwell, Governor,* 60 P.R.R. 80; *Rice & Adams* v. *Lathrop,* 278 U. S. 509, 514; *Ohio Oil Co.* v. *Conway,* 279 U. S. 813; *Harrisonville* v. *Dickey Clay Co.,* 289 U. S. 334. It goes without saying that we have not even examined the contention that the Acts assailed are invalid insofar as they purport to apply retroactively as of January 1, 1940 and insofar as they impose income taxes on resident aliens at a higher rate than on resident citizens. We leave those questions for another day.

The order of the district court will be affirmed.