OLD LINE INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30045, 32987. Promulgated October 3, 1928.

*H. J. Requartte, Esq.*, and *T. S. Allen, Esq.*, for the petitioner.
*Benton Baker, Esq.*, for the respondent.

OPINION.

LANSDON: Section 245(a)(1) and (2) of the Revenue Act of 1921 provides:

That in the case of a life insurance company the term "net income" means the gross income less—

(1) The amount of interest received during the taxable year which under paragraph (4) of subdivision (b) of section 213 is exempt from taxation under this title;

(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, plus (in case of life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation) 4 per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only.

The only issue remaining to be determined in this proceeding is whether the contingency reserve maintained by petitioner was a reserve required by law within the meaning of the above quoted section.

Sections 7745, 7746, 7748 and 7749 of the Compiled Statutes of Nebraska (1922) grant to the Department of Trade and Commerce, of which the insurance department is a division, general supervisory powers over insurance companies. Sections 7744, 7830, and 7858, pertaining to life insurance companies and the maintenance of reserves, provide in part as follows:

§ 7744. *Terms Defined.* " Unearned premiums ", and " net value of policies " severally mean the liability of an insurance company upon its insurance contracts, other than accrued claims, computed by rules of valuation established herein.

§ 7830. *Life—legal reserve.* The department of trade and commerce shall annually make valuation of all outstanding policies, additions thereto, unpaid dividends, and all other obligations of every life insurance company doing business in this state; and all such valuations made by it, or by its authority, shall be according to the standard of valuation adopted by the company, which standard shall be stated in its annual report. Such standard of valuation, whether on the net level premium, preliminary term, any modified preliminary term, or select and ultimate reserve basis, for policies issued after the passage of this article shall be according to the American experience or actuaries' table of mortality, with not less than three and not more than four per cent compound interest. * * *

§ 7858. *Accumulations.* Any domestic life insurance company may accumulate and maintain in addition to the net value of its policies and all accumulations held on account of existing or future dividends policies or groups of such policies, a contingency reserve of not more than ten per cent of said net value, or the sum of one hundred thousand dollars, whichever is the greater. For cause shown the department of trade and commerce may at any time, and from time to time permit any company to accumulate and maintain a larger contingency reserve, not exceeding one year under any one permission, by filing in the office of the department of trade and commerce a written request stating the reasons therefor. (R. S. 1913, 3259; 1919, p. 643.)

Pursuant to section 7858, above quoted, petitioner has set up on its annual statements, in addition to its regular reserve, a " mortality fluctuation fund " in an amount equal to 10 per cent of the net value of its policies. It contends that this is a reserve required by the State of Nebraska inasmuch as the Insurance Commissioner orally directed that it be maintained. The testimony in support of the allegation that the fund was maintained at the direction of the Insurance Commissioner is not impressive, but admitting that fact, we are of the opinion that it is still not a reserve required by law, within the meaning of the Revenue Act. Section 7858 permits additional reserves with the object of protecting the citizens of Nebraska against loss through insolvency of insurance companies. Abundant caution is exercised to maintain insurance companies in

a strong financial position. The Revenue Act on the other hand considers reserves in computing the taxable income of the insurance companies and is not primarily concerned with the solvency of the company.

"·Reserve funds" as used in the Act has a technical meaning which includes those funds reserved to meet the policy obligations at maturity. The calculation of the reserve is a distinctly actuarial function and being the amount theoretically necessary for reinsuring the risks, is sometimes termed "reinsurance fund" or "reinsurance reserve." As applied to a policy the term means "value" or "valuation"; that part of the assets of the company which, according to a specified table of mortality, must be set apart to meet or mature the company's obligation· to insured. New Standard Dictionary, "Reserve"; Bouvier's Law Dictionary, "Reserve"; *Ramer v. Reserve Loan Life Insurance Co.*, 213 Ill. App. 164; *Detroit Fire & Marine Insurance Co.* v. *Hartz*, 132 Mich. 518; 94 N. W. 7.

Insurance writers define the legal or required reserve as follows:

Riegel and Lowman (Prentice-Hall). Insurance Principles and Practices, p. 97:

CALCULATION OF THE RESERVE.— * * * It is necessary to assume a mortality table and an expected rate of interest, the American Experience Table of Mortality is the one generally employed and three and one-half per cent is the usual interest rate assumption. Taking these as the bases of calculation, the present value of all future death claims is estimated and there is deducted the present value of all future premium payments. * * * And possibly here is the best point at which to give a definition of the *legal* or *required reserve*. It is that amount which, if added to the present value of future premium payments, will equal the present value of future death claims. * * *

Richards—Insurance, p. 20:

Reserve is that portion of the premiums of a policy with interest thereon which is required to be set aside as a fund for the payment of the policy when it becomes due.

See also Biddle—Insurance, § 66; Huebner—Principles of Life Insurance.

"Reserve" is defined in *Jefferson* v. *New York Life Insurance Co.*, 151 Ky. 609, 152 S. W. 780, which was an action by the beneficiary to recover the face value of a policy on which premiums had been paid for four years, the fifth annual payment being in default. The question presented was whether the reserve less any indebtedness due the company was sufficient to provide paid-up insurance to a date beyond that of the insured's death. At page 783 the court stated:

[4] The net value of a policy is provided for by section 653, Kentucky Statutes, and is but another name for "reserve", and means that part of the annual premiums paid by the insured which, according to the American Experience Table of Mortality, must be set apart to meet or mature the company's obligations to the insured. This net value, or reserve, can always be

determined with mathematical precision; and, among those at all familiar with insurance and the technique of that business there is no dispute as to how the net value of a policy is determined. The net value of a policy on any given date is its actual value on that date, its reserve. Hence, when the insured failed to pay his premium on December 17, 1907, under the terms of his contract, he was entitled to extended insurance for such time as the reserve, or net value of the policy, would have carried $2,500, when applied as a single premium, according to the company's published tables. * * *

The decision of the Supreme Court in *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109, 119, is based upon a similar conception of " reserve funds ":

4. A number of policyholders died during the calendar year, but their deaths were not reported before it terminated. The Superintendent of Insurance required the Company to set aside a special fund to meet these unreported losses, and it claimed that this was an addition to the reserve fund required by law. We think this claim was properly rejected by the Commissioner, although the courts below held otherwise. *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585, and *United States* v. *Boston Insurance Co.*, 269 U. S. 197, pointed out that " the net addition, if any, required by law to be made within the year to reserve funds ", does not necessarily include whatever a state official may so designate; that " reserve funds " has a technical meaning. It is unnecessary now to amplify what was there said. The item under consideration represented a liability and not something reserved from premiums to meet policy obligations at maturity.

*McCoach* v. *Insurance Company of North America*, 244 U. S. 585, 589, is a case in which an action was brought to recover taxes for the years 1910 and 1911 on the ground that there should have been deducted from gross income certain amounts held as a reserve against accrued but unpaid losses.

The Insurance Commissioner of the State of Pennsylvania had required plaintiff and similar companies to return each year as an item among their liabilities the net amount of unpaid losses and claims. The following discussion of the court is particularly applicable in the instant case:

The act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting " all losses actually sustained within the year and not compensated by insurance or otherwise." And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies.

In *United States* v. *Boston Insurance Co.*, 269 U. S. 197, the Supreme Court held that " reserve funds " so denominated by a state statute or officer do not necessarily constitute " reserves required by law." The court overruled in part *Maryland Casualty Co.* v. *United*

*States*, 251 U. S. 342. where it had been held that a fund denominated "loss claims reserve" maintained pursuant to the requirements of the Insurance Department of Pennsylvania constituted a reserve required by law, stating at page 203:

Upon a re-examination of the record it becomes plain that we misapprehended the opinion and ruling of the lower court; also that the reason advanced to support our conclusion is insufficient. The Commissioner of Internal Revenue had refused to allow the deduction claimed because of addition to the reserve for unpaid loss claims (except liability claims—the net addition to which reserve was allowed). The Court of Claims, in a perplexing opinion, approved the Commissioner's action. The finding that the Insurance Department of Pennsylvania, pursuant to statute, had at all times since and including 1909 required claimant to keep on hand, as a condition of doing business in the state, "assets as reserves sufficient to cover outstanding losses", without more, was not sufficient to justify the deduction of the reserve as one required by law to be maintained, within the meaning of the Act of Congress. This had been announced by *McCoach* v. *Insurance Co.*

The fund herein involved was maintained to provide against possible losses in reserves invested and anticipated excessive mortality losses due to the influenza epidemic. That the losses anticipated would result was speculative. Future liability on outstanding policies, on the other hand, is relatively certain and it is this liability for which a reserve is required. The "legal" or "required" reserve is computed by the use of a mortality table, usually the American experience Table of Mortality, which is based on experience over a long period of years and which contemplates application over a long period of years. This table thus takes into account periodical epidemics of the past and thereby makes an allowance for such epidemics in the future. The record does not establish that the reserve of the net value of outstanding policies was insufficient to meet the increased death rate caused by the influenza epidemic. The anticipation of loss in reserves invested resulted from a shrinkage in farm values on which loans had been made at 50 per cent of the actual value. During the years herein involved no loss was actually sustained.

We are of the opinion that petitioner's "mortality fluctuation fund" is not a reserve required by law within the meaning of section 245(a)(2) of the Revenue Act of 1921.

Pursuant to the stipulation entered into by the parties, there should be added to the reserves allowed by the respondent for the year 1924 the sum of $22,837.30, which was an additional reserve maintained for the surrender value of accident policies issued by petitioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, MILLIKEN, and VAN FOSSAN agree with the result.