*Decision will be entered pursuant to Rule 50.*

KASKASKIA LIFE INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MISSISSIPPI VALLEY LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27576, 41506, 42157.   Promulgated February 18, 1931.

*John V. Sees, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

OPINION.

MATTHEWS: These proceedings, which were duly consolidated for hearing and decision, involve deficiencies in income taxes for the years 1925, 1926, and 1927 in the amounts, respectively, of $1,208.13, $937.23, and $897.15.

The Kaskaskia Life Insurance Company was incorporated on July 29, 1924, and duly licensed to engage in the business of life insurance under the laws of Illinois. Its principal place of business was Shelbyville, Ill. The Mississippi Valley Life Insurance Company is the same corporation, the change in name having taken place in 1927 by corporate action, with the authority and consent of the Department of Trade and Commerce of the State of

Illinois, which department has charge of insurance companies. Its home office is Madison, Ill., and its principal place of business is St. Louis, Mo. The insurance company will be referred to hereinafter as the petitioner, without regard to the name under which it did business in the several years under consideration.

The only issue arises on the refusal of the respondent to allow the petitioner to compute its income as an ordinary corporation and make its return on Form 1120, and his insistence that the income be computed as a life insurance company, and that Form 1120–L, provided for the use of life insurance companies, be employed.

Each year petitioner filed its annual statement as a life insurance company with the Department of Trade and Commerce of Illinois, showing the financial status of the company, and in accordance with the law of that State maintained a guarantee capital of $100,000 and the reserves required for the fulfillment of its policy contracts. The amounts of the reserves for the fulfillment of policy contracts were for 1925, 1926, and 1927, respectively, $2,152.10, $12,117, and $57,928.

The substance of the petitioner's contention is that its guarantee capital of $100,000 is a reserve and that it was not a life insurance company for the purposes of taxation in the years in controversy, since the reserves held for the fulfillment of its policy contracts did not comprise more than 50 per cent of its total reserves. Petitioner admits that it is a life insurance company in fact, but not for taxation purposes.

Petitioner's contention is founded upon the premise that section 242 of the Revenue Act of 1926 defines a life insurance company for tax purposes and that a corporation, although admittedly doing a life insurance business, which does not fall within the scope of this definition, is to be taxed in the ordinary way as any other corporation. Upon this foundation the petitioner builds up the argument that Congress did not mean to tax life insurance companies as such in the first few years of their existence and until their reserve fund held for the fulfillment of life insurance contracts should exceed any other reserves which the company might hold, treating the guarantee capital as a reserve, or, in the words of the statute, until the reserves held for the fulfillment of its life insurance contracts should comprise more than 50 per cent of its total reserve funds.

The respondent takes the position that the guarantee capital is not a reserve fund within the meaning of section 242 and that petitioner is a life insurance company for the purposes of taxation by reason of the fact that its reserve funds held for the fulfillment of its life and annuity contracts comprise more than 50 per cent of its total reserve funds.

The real point in controversy is whether the guarantee capital of $100,000 deposited by the petitioner with the Department of Trade and Commerce of Illinois, where the petitioner was incorporated, and in accordance with the law of that State, constitutes a part of the petitioner's " total reserve funds," as that phrase is used in section 242 of the Act.

If the guarantee fund does not come within total reserves, the reserves held by the petitioner for the fulfillment of its life and annuity contracts obviously comprise more than 50 per cent of its total reserves, comprising in fact its total reserves.

If we look at the Illinois Statute (5 Callaghan's Ill. Stat. Ann. (1924)), chapter 73, Insurance, we find the following pertinent provisions:

¶315. Guarantee Capital—Investment of.] Section 1. That before any life insurance company goes into operation, under the laws of this State, a guarantee capital of at least one hundred thousand dollars shall be paid in money and invested in the stocks of the United States or of this State, or of any city or town in this State, estimated at their market value, or in such other stocks and securities as may be approved by the Insurance Superintendent, or in mortgages being first liens on real estate in this State, the said real estate being worth at least twice the amount of money loaned thereon, with abstract showing a good and sufficient title, and the certificate of two reputable landholders, under oath, certifying to the value of said property.

 \*        \*        \*        \*        \*        \*        \*

¶319. Increase or decrease of capital stock—Amendment of charter—Procedure.] § Id. No company organized under this Act shall increase or decrease its capital stock or otherwise amend its charter except in accordance with the provisions of this section and subject to the supervision of the Director of Trade and Commerce as hereinafter provided. \* \* \*

¶320. Examination by Auditor—Fee.] § 2. No policy shall be issued until a certificate from the Auditor has been obtained authorizing such company to issue policies. The said auditor shall examine the capital, and the majority of the directors shall make oath that the money has been paid in by the stockholders towards payment of their respective shares and not for any other purpose, and that it is intended that the same shall remain as the capital of the company, to be invested as required by the laws of this State. \* \* \*

¶321. Certificate from Auditor—Deposit—Permission.] § 2a. Whenever the corporators shall have fully organized such company, and the said company shall have deposited with the Auditor the required amount of capital, it shall become his duty to furnish the corporators with a certificate of deposit, which, with the certified copy of said declaration previously received from the Auditor, when filed for record in the office of the recorder of deeds in the county where such company is to be located, shall be the authority to commence business and issue policies, and the same, or a certified copy thereof, shall be evidence in all suits.

The statutes further provide that the insurance company must make an annual statement according to a prescribed form (par. 325, 326); and that a life insurance company is prohibited, on pain of discontinuance of its business and even of involuntary insolvency,

from permitting a condition to arise and continue when "the admitted assets  *  *  *  in excess of the minimum amount of capital stock required under this Act  *  *  *  are less than its liabilities, including the net value of its policies  *  *  *." (Par. 331.) It is also of interest that section 341 prohibits an Illinois life insurance company from issuing fire, marine, and livestock insurance policies, or health and accident insurance except where the last two are combined with life insurance; but this provision should be read in connection with sections 436–440, which permit a life insurance company to engage in separate health and accident business, or a health and accident company in separate life business, provided it deposits with the Department of Trade and Commerce fully paid-in capital stock of an amount not less than $200,000 for investment in certain stated classes of securities, and appropriately amends its charter in a prescribed manner.

The provision of the taxing statute in question, section 242, Revenue Act of 1926, is as follows:

When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

This provision first appears in the revenue acts as section 242 of the Act of 1921, which in sections 242 to 247, inclusive, shows the result of the attempt made by Congress to find a more satisfactory and equitable basis for the taxation of insurance companies, both life and otherwise, than that hitherto employed. *Independent Life Insurance Co.*, 17 B. T. A. 757, 761.

Attention should here be drawn again to the provisions of the Illinois statutes noted above which prohibit a life insurance company licensed under its laws from doing a mixed business except where the life or endowment insurance is *combined* with the health and accident insurance in the same contract, so long as the deposited capital stock of the company is only $100,000; and allow a mixed life business and a separate health and accident business to be carried on only where the company's charter powers so permit and the paid-in and deposited capital is not less than $200,000. Since the petitioner's paid-in capital stock was only $100,000, it follows, therefore, that it is to be regarded solely as a life insurance company under Illinois law.

The respondent's counsel argues that the guarantee capital is not a "reserve fund" within the meaning of section 242, since it is not a "reserve fund required by law" within the meaning of section 245(a)(2) of the statute. In pursuance of this argument he suggests that the Treasury Department in Regulations 62, article

661 (covering the 1921 Revenue Act), and in the regulations promulgated under the later acts, has always adhered to the view that the two phrases were identical in meaning; Regulations 62, articles 661, 681; Regulations 65, articles 661, 681; Regulations 69, articles 661, 681. Article 661, Regulations 62, reads in part as follows:

* * * In determining whether an insurance company is a "life insurance company" as defined in section 242, no reserve shall be regarded as held for the fulfillment of life insurance and annuity contracts unless the company is entitled to a deduction from gross income on account thereof under the provisions of section 245(a) (2) and article 681. * * *

But we are not concerned here with the meaning of a "reserve fund * * * held for the fulfillment of life insurance and annuity contracts," as used in section 242, but with the meaning of the other phrase used in that section, "total reserve funds." As to what constitutes a "reserve required by law" within the meaning of section 245(a)(2), Revenue Acts of 1921, 1924, and 1926, regarding deductions from gross income, we have no doubt. That phrase has been amply expounded by the United States Supreme Court and this Board. *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585; *United States* v. *Boston Insurance Co.*, 269 U. S. 197; *New York Life Insurance Co.* v. *Edwards, Collector*, 271 U. S. 109; *Standard Life Insurance Co. of America*, 13 B. T. A. 13; *Old Line Insurance Co.*, 13 B. T. A. 758.

And in *Midland National Life Insurance Co.*, 14 B. T. A. 200, the Board, construing section 245(a) (2), Revenue Act of 1924, held that a fund of $100,000 deposited by the petitioner with the Commissioner of Insurance of South Dakota, pursuant to the law of that State, as a condition precedent to the right to do business within the State, was not a "reserve required by law." The Board said:

The fund herein involved is a deposit of capital to guarantee the performance by insurance companies of contracts entered into. It has no relation to the net value of outstanding policies and is not a fund reserved from premiums to meet policy obligations at maturity. We are of the opinion that it is not a reserve required by law within the meaning of the Revenue Act. Old*Line Insurance Co.*, 13 B. T. A. 758.

There would seem to be no question, therefore, that the fund here in controversy, the guarantee capital, was not a "reserve required by law" within the meaning of section 245(a)(2) of the Acts of 1921, 1924, and 1926. The *Midland National Life Insurance Co.* case is conclusive upon this point.

The respondent's attempt to equate the phrase, "reserve fund required by law," as used in section 245(a)(2) which admittedly has

a restricted and technical meaning, with "reserve fund * * * held for the fulfillment of life insurance and annuity contracts," used in section 242, accomplishes no purpose. Obviously the latter phrase can not mean the same thing as "total reserve funds" used in the same section, for neither of two equals can exceed the other; nor, as we have said, do the Treasury Regulations, article 661, maintain such a view.

We come back, then, to the question whether in the plain words of the statute, without any gloss supplied as to the intent of Congress, the guarantee capital comes within the meaning of "total reserve funds," as used in section 242. We do not think it does.

The State statute requires, in substance, nothing more than that the capital of the life insurance company be of a fixed amount, be paid in, be invested in a certain way and be not impaired. It is significant here that the guarantee capital is not reckoned in with the life insurance company's assests in striking a balance to determine whether such a deficit exists as to warrant the State Commissioner declaring the company insolvent if the deficit is not made good, for paragraph 331, section 10, of the Illinois Statute provides in part:

If the Department of Trade and Commerce shall find, in the case of any company doing business under this Act, that the admitted assets of a stock life insurance company *in excess of the minimum amount of capital stock required under this Act,* * * * are less than its liabilities, including the net value of its policies computed by the standard of valuation established by this section, such Department shall give notice to the company of the amount of such deficit as determined by it, and shall require that the deficit be made good within such period as it may designate in its notification, which shall be not less than fifteen days nor more than ninety days, from the issuance of such notification; *provided* that, in the case of a stock life insurance company where the deficit shall exceed twenty per centum of such minimum capital stock, * * * the Department shall further notify the company to discontinue the issuance of new policies until the deficit shall have been made good. (Italics supplied.)

We are unable to see how such a requirement as to paid-in capital can be construed as constituting a "reserve" even under the most nontechnical definition. We do not think it too broad a statement to say that the ordinary meaning conveyed by the word "reserve," when applied to an insurance company, is that portion of the premiums retained and placed in a fund to meet policy obligations at maturity. Bouvier (Rawle's Third Revision, p. 2919, *sub verb.* "Reserve") defines "reserve":

*In Insurance Law.* That part of the premiums on a policy, with the interest thereon, which is required to be reserved or set aside as a fund for the payment of the policy when it becomes due. Richards, Ins. L. 20.

An insurance company is deemed to be solvent when its reserved funds, invested at a specified rate of interest, will suffice to meet the payments on its policies as they shall mature. As a factor of safety, the rate of interest is usually fixed very low.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It is urged upon us by the petitioner that the Supreme Court has held in *Duffy* v. *Mutual Benefit Co.*, 272 U. S. 613, that a legal reserve of a mutual life insurance company may be regarded as in the nature of " invested capital," under section 207 (a) of the Revenue Act of 1917. This is true, and the doctrine has recently received a further extension in *Atlantic Life Insurance Co.* v. *Moncure*, 35 Fed. (2d) 360, affd., 44 Fed. (2d) 167, in which the Court held that the amount held as a legal reserve by a stock life insurance company might be included as invested capital. It by no means follows from these cases, however, that the converse of this principle is true, that the guarantee capital of a stock life insurance company may be regarded as a reserve for tax purposes.

If it be contended that the meaning of section 242 is ambiguous and can not be learned from the plain words of the section (and the use of the word " means " in the definition lends color to this argument), we must seek the intent of Congress. *Takao Ozawa* v. *United States;* 260 U. S. 178. The Senate hearings on the bill which became the Revenue Act of 1921 (the first to contain the new provisions for taxing insurance companies on what was conceived to be a more scientific basis than that theretofore employed) shed much light on the matter. T. S. Adams, the Treasury Department's tax adviser, testified at that time that the draftsman of the bill had in mind life insurance companies which were also doing a *separate* accident and health insurance business.[1] Those life companies which issued *combined* life, health and accident policies were expressly included in the bill as life companies. But to differentiate between the life companies doing a mixed business, the 50 per cent line was drawn, the amount of the reserve held for the fulfillment of life and annuity (and combined life, health and accident) contracts being taken as the measure of such business. If more than 50 per cent of the reserves were for separate health and accident insurance business (on the reserve test adopted), then obviously the life reserve would fall below 50 per cent of the " total reserve funds," and the company would not be taxable as a life insurance company but as a nonlife insurance company. Further facts stated at the hearing were that health and accident insurance had, at that time at least, no sound actuarial basis and that State laws therefore did not require

---

[1] Senate Finance Committee hearings on H. R. 8245, 67th Cong., September 6, 1921, pp. 83–95.

a fixed reserve to be held; nevertheless, for such policies insurance companies did maintain reserves, and it was such reserves upon which the additional 4 per cent deduction was allowed under section 245(a)(2) as " reserve funds (not required by law)."

It thus appears clearly that the reserves *other* than those held for life contracts contemplated by the statute included those for separate accident and health policies, and the two classes of reserves combined would constitute the " total reserve funds " of section 242 now under consideration.

Upon such a construction of section 242 it is clear, for the reasons already suggested, that the guarantee capital is not a reserve within the meaning of section 242 and that petitioner is taxable as a life insurance company, since its total reserves were held for the fulfillment of its life and annuity contracts. The respondent's calculation of petitioner's income for the years in question was made on the basis of petitioner's annual statement to the Insurance Department of the State of Illinois and in accordance with sections 242 to 245 of the Revenue Act of 1926.

The petitioner asserts that it had no taxable income for the years in question within the meaning of the Sixteenth Amendment as interpreted by the Supreme Court, but a loss. Its claim of loss for those years was calculated on a basis not recognized by the applicable statute. In an allegation couched in the most general terms petitioner seeks to raise the issue of the constitutionality of the whole existing scheme of insurance income taxation, but at the same time raises no question as to the improper inclusion as income by the respondent of any amount calculated pursuant to that insurance taxation scheme. This is not an attack then on the constitutionality of any part of the insurance taxation scheme, such as was presented in *Independent Life Insurance Co., supra.*

Reviewed by the Board.

*Judgment will be entered for the respondent.*