AMERICAN CENTRAL LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30133, 31998, 56024, 63436.    Promulgated July 17, 1934.

*Robert A. Adams, Esq.*, and *Abbot P. Mills, Esq.*, for the petitioner. *James C. Maddox, Esq.*, and *John D. Foley, Esq.*, for the respondent.

1184

OPINION.

STERNHAGEN: 1. In computing the deduction under section 245, Revenue Act of 1926, and section 203, Revenue Act of 1928, the Commissioner has excluded from the "reserve funds required by law" the stipulated amounts of the insured's personal benefit fund. This fund, as is shown by the findings, consists of amounts of $6.23 each contributed by policyholders as provided in the policies called "Whole Life Premium Reduction Payable at Death." This fund is by the terms of the policy built up for a period of 19 years, when, with the accretion of the company's fixed interest contributions, it is apportioned among the survivors of the persistent contributing policyholders of the class. Thereafter, at the end of 20 years, the amounts thus apportioned are, at the election of the policyholder, distributed either in cash or by being applied to further insurance or otherwise as expressly provided in the policy. The respondent's disallowance treats the fund as something apart from insurance and hence outside the intendment of the statute.

There can be no doubt that this is a reserve, that it is contractually provided in the petitioner's insurance policies, and that it is within

the requirement of the Indiana State law as that law is interpreted and administered by the State Commissioner of Insurance. In practice, it is regarded and treated by the petitioner as among its insurance reserves. Unless, therefore, it is apparent from analysis that the fund is something else and is not within the plan of the statute, its inclusion within the statutory reserve follows. While nomenclature alone does not determine the nature of the fund, consideration must be given to the recognition and treatment of it in the field of insurance and of state supervision. The scope of the term " reserve funds required by law ", as used in the revenue acts, has often been considered in respect of various funds set up by insurance companies under varying circumstances.[1] These different funds vary widely and each requires consideration in respect of its source, function, and sanction as the basis for its classification within or without the statutory provision.

The reserve which has been most recently and perhaps most fully considered is that of a premium reduction coupon fund, and the decisions affecting such reserve guide us as to the present decision. *Commissioner* v. *Standard Life Ins. Co.*, 47 Fed. (2d) 218 (C.C.A., 3d Cir.) ; *Commissioner* v. *Western Union Life Ins. Co.*, 61 Fed. (2d) 207 (C.C.A., 9th Cir.) ; *Commissioner* v. *Great American Life Ins. Co.*, 70 Fed. (2d) 133, rehearing denied April 30, 1934 (C.C.A., 10th Cir.). Like the coupon obligation in those cases, the obligation here to each interested policyholder is contingent upon his survival of the term and his election to persist in his participation and to select the method of application of his distributive share of the fund upon its maturity. While the company may be required to pay cash, as in the case of matured coupons, it may also, as in that case, be required to apply the distributive share to further insurance.

The Commissioner urges that, although the obligations as to the benefit fund and its contributions are found in the insurance policy, they are inherently not insurance obligations but that the arrangement is merely a sort of investment pool. We may not, however, upon this record, treat this fund as if it were unrelated to the insurance policies. To some extent most modern insurance embodies something besides strict insurance. We do not understand that the reserves which the statute recognizes are only those which can be mathematically related to the insurance function in its strict and narrow

[1] *McCoach* v. *Insurance Co.*, 244 U.S. 585 ; *United States* v. *Boston Ins. Co.*, 269 U.S. 197 ; *New York Life Ins. Co.* v. *Edwards*, 271 U.S. 109 ; *Massachusetts Mutual Life Ins. Co.* v. *United States*, 56 Fed. (2d) 897 ; *Minnesota Mutual Life Ins. Co.* v. *United States*, 66 Ct.Cls. 481 ; *Commissioner* v. *Standard Life Ins. Co.*, 47 Fed. (2d) 218 ; *Commissioner* v. *Western Union Life Ins. Co.*, 61 Fed. (2d) 207 ; *Commissioner* v. *Great American Life Ins. Co.*, 70 Fed. (2d) 133 ; rehearing denied April 30, 1934 ; *Old Line Ins. Co.*, 13 B.T.A. 758 ; *Reserve Loan Life Ins. Co.*, 18 B.T.A. 359 ; *Midland Mutual Life Ins. Co.*, 19 B.T.A. 765 ; *Farmers Life Ins. Co.*, 27 B.T.A. 423 ; *Atlas Life Ins. Co.*, 29 B.T.A 750 ; *Missouri State Life Ins. Co.*, 29 B.T.A. 401 ; *Illinois Life Ins. Co.*, 30 B.T.A. 1160.

sense. While clearly it excludes distinctly noninsurance funds, such as reserves for dividends, *Midland Mutual Life Ins. Co.*, 19 B.TA. 765, and while it has recently been held to exclude a "guaranteed dividend fund", *Farmers Life Ins. Co.*, 27 B.T.A. 423, we think that this does not require the exclusion of such a fund as this, which is expressly provided for in an insurance policy as one of its inherent provisions. This fund would no doubt serve to measure the extent of reinsurance available to the petitioner, cf. *Commissioner* v. *Great American Life Ins. Co.*, *supra*.

While it is not suggested by the respondent, the inquiry arises whether, if this fund were not among the reserve funds required by law but were among the petitioner's noninsurance obligations, there would be a right under section 245 (a) (8) to deduct the interest which the petitioner was obligated to accrue.

In our opinion, the Commissioner erroneously excluded the insured's personal benefit fund from the statutory reserve funds required by law. Since, however, the respondent did permit the inclusion at the end of 1926, no adjustment as to that date is required.

2. The stipulated amounts held by petitioner as a reserve to meet its coupon obligations under the premium reduction coupon policies are properly parts of the reserves to be used as the basis of the deductible percentage. *Commissioner* v. *Standard Life Ins. Co.*, *supra* (C.C.A., 3d Cir.) ; *Commissioner* v. *Western Union Life Ins. Co.*, *supra* (C.C.A., 9th Cir.) ; *Commissioner* v. *Great American Life Insurance Co.*, *supra* (C.C.A., 10th Cir.) ; *Reserve Loan Life Ins. Co.*, *supra* (petition for review dismissed, C.C.A., 7th Cir.) ; *Atlas Life Ins. Co.*, *supra*.

3. That the statute is valid in its requirement that the computed rental value of space occupied by petitioner in its own building must be included in gross income as a condition to the deduction of taxes and expenses is now settled by *Commissioner* v. *Independent Life Ins. Co.*, 292 U.S. 371. Hence the respondent's inclusion of the stipulated rental value for 1925, 1926, and 1928 is correct. For 1929, the petitioner's failure to include any rental value for such space supports the respondent's disallowance of any deduction for such taxes and expenses.

4. The petitioner in earlier years had loaned money on mortgages. In 1928 and 1929, interest, and probably principal, being in default, petitioner acquired the mortgaged properties, some by voluntary deed and some by bidding at foreclosure sales. In each instance respondent included in petitioner's income of the year of such acquisition the amount of accrued interest. The petitioner contests this inclusion *in toto*, saying that such interest was not received either actually or constructively.

Since, under the special method of taxing life insurance companies, profit is not included in gross income and losses are not deductible, the only question is whether in these transactions petitioner derived income by way of interest.

a. As to the property acquired by voluntary deed, it appears only, as shown by our findings, that the properties acquired in 1928 had secured loans upon which interest of $6,708.55 was due and unpaid, and that $129.75 had been expended by petitioner as advances and transfer charges; and that as to those acquired in 1929, the unpaid interest was $5,393.17 and the advances and transfer charges were $1,013.10. From this scant evidence, it can not be said that petitioner did not receive the interest. If the properties were worth more than the loans, costs, and interest, (and the record on this is silent), it could not be said that petitioner did not receive its interest. The property received may properly, without resort to the doctrine of constructive receipt, be treated as cash to the extent of its value, and the interest which a taxpayer is required to include in income is not restricted to cash receipts bearing the label of interest. We may assume, as the Commissioner did, that the mortgagee's debt for the interest was discharged by the transfer. As to the items of $6,708.55 for 1928 and $5,393.17 for 1929, the respondent's determination is sustained. *Missouri State Life Ins. Co.*, 29 B.T.A. 401.

b. As to the property acquired by bidding it in at foreclosure, different situations require different treatment. Where the amount of the bid was no more than the principal of the loan, the decisions in *John Hancock Mutual Life Ins. Co.*, 10 B.T.A. 736, and *Missouri State Life Ins. Co., supra*, have laid down the rule that nothing is to be treated as interest received. Cf. *Drier v. Helvering*, 72 Fed. (2d) 76. This applies to 12 of the 17 foreclosures covered by the evidence.

In five cases specifically shown in the findings (Nos. 64, 62, 85, 74, and 88) the bid exceeded the principal. The excess should first be applied as reimbursement for expenses and delinquent taxes, and only the remainder included in income as accrued interest. It does not appear whether, in any instance, the entire indebtedness was discharged or whether there remained an undischarged liability to any extent. The Commissioner, however, erred in including the book interest between the date of foreclosure and the transfer entry in the real estate account. That amount was in no sense received, nor was it accrued at the date of foreclosure.

*Judgment will be entered under Rule 50.*