**JONES, Collector of Internal Revenue, v. OKLAHOMA BEN. LIFE ASS'N.**

No. 3139.

Circuit Court of Appeals, Tenth Circuit.

Oct. 23, 1945.

HUXMAN, Circuit Judge, dissenting.

John F. Costelloe, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., and Robert E. Shelton, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for appellant.

Leonard H. Savage, of Oklahoma City, Okl. (Cheek, Gibson, Savage & Benefield, of Oklahoma City, Okl., on the brief), for appellee.

Robert Ash, of Washington, D. C., for Texas Association of Mutual Life Insurance Officials, amicus curiae.

Grover Sellers, Atty. Gen. of Texas, and William J. Fanning, Asst. Atty. Gen. of Texas, amicus curiae for State of Texas.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Oklahoma Benefit Life Association[1] is a mutual benefit association incorporated under ch. 15, Tit. 36 O.S.A.1941. The Commissioner of Internal Revenue determined a deficiency in the Association's income taxes for the year 1937. It paid the deficiency under protest and recovered a judgment against Jones, Collector, for the amount thereof, with interest. From that judgment, Jones, as Collector, has appealed.

The Commissioner determined the deficiency on the theory that the Association is not a life insurance company within the meaning of § 201(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 898, and, therefore, not entitled to the deduction allowed with respect to reserves by § 203(a)(2) of the Revenue Act of 1936, and that it was assessable under § 204 of the Revenue Act of 1936 as an insurance company other than life or mutual.

The Association created and maintained a reserve fund pursuant to 36 O.S.A.1941 § 701.[2]

At the beginning of the year 1937, the Association had in its reserve fund $71,088. At the close of the year it had in such fund $79,873.85. Such fund comprised more than 50 per cent of the Association's total reserve funds. The fund is designated on the books of the Association as reserve fund. Prior to 1935, it was designated as reserve fund in the statute. After an amendment to the statute in 1935, it was designated as an emergency fund. The As-

---

[1] Hereinafter referred to as the Association.

[2] 36 O.S.A.1941 § 701, provides:

"Dues—Emergency fund—Additional assessments.—Every mutual benefit association doing business in this State under the provisions hereof shall by its by-laws provide for the payment by its members of sufficient dues to cover the expenses of conducting the business of such association and for such assessments as may be necessary to provide funds sufficient to pay the benefits to which its members shall become entitled and also to establish an emergency fund of at least one ($1.00) Dollar per annum, per Thousand ($1,000.00) Dollars death benefits with which to meet any unusual or unanticipated benefits or losses which may become due and payable, which emergency fund shall be available for use by the association as may be provided in its by-laws without regard to the group, class or circle whose members might have paid assessments therefor; provided, however, that two additional assessments for such emergency fund of at least One ($1.00) Dollar per Thousand ($1,000.00) Dollars of death benefits shall be levied annually in these circles, classes or groups where and when it may be done in any calendar month in which no death benefit assessment or call for dues is made upon members of such circle, class or group; provided further, that such associations may pay death benefits in excess of seven per thousand in any such circle, class or group when the emergency fund to its credit shall be sufficient therefor; and provided further, that if any annual report of a mutual benefit association, as provided for in this Act or an investigation of the Insurance Commissioner discloses the fact that the mortuary and emergency funds of such association will not be sufficient to pay the benefits or losses to which its members or their beneficiaries may be entitled during the succeeding biennial period, the Insurance Commissioner, taking into consideration the age of the members and any special provisions for meeting such benefits or losses or for replenishing its funds, may direct such association to make such additional assessments as may be necessary to meet the said benefits or losses during the succeeding biennial period. Out of the original membership fee charged every new member there shall be placed in the mortuary or Emergency fund a sum sufficient to equal at least one maximum benefit assessment to which said member would be liable under his contract. Whenever the Association shall use any portion of the mortuary or benefit funds to pay promised benefits payable therefrom said association shall for the purpose of replenishing, establishing or maintaining a mortuary or benefit fund of sufficient strength to enable the association to meet promptly all valid claims for benefit as they mature, levy an additional assessment or assessments for such fund; provided that the association shall not be required to levy such assessment until in the judgment of the Executive Officers of such association such additional assessment is needed; provided, that associations which have a table of rates that are sufficient to meet the above requirements shall not be required to make the assessment provided for herein, upon members whose benefit certificates are based upon such rate-table."

sociation carries the fund on its books as a liability. The Insurance Commissioner of Oklahoma requires the fund to be so carried. The reserve fund can be used only for the payment of claims arising under policy contracts. Since 1936, the credit to lapsed policies cannot be transferred from the reserve fund to the expense fund.

The Association may use the interest earned by such fund for the payment of expenses.

At the close of business, December 31, 1937, the Association had insurance in force in the amount of $8,184,000. Of that amount, $533,500 was on the level rate plan. Under such plan policyholders paid a fixed rate each month. The policyholders, however, were subject to increased or additional assessments, should the premium paid not be sufficient to pay claims arising under such policies.[3]

$7,650,500 of the Association's insurance was on what is commonly designated as the group or assessment plan. Under that plan, the policyholders are assessed to pay death claims arising from month to month. The policy holders also pay additional assessments for the reserve fund and pay two assessments each year for the expense fund. If the death claims exceed seven per thousand per year they may be paid from the reserve or emergency fund.

The emergency fund may be invested only in accordance with the laws of Oklahoma relating to the investment of funds of domestic stock insurance companies.[4]

Prior to the enactment of the Revenue Act of 1921, 42 Stat. 227, insurance companies were taxable as ordinary corporations. In the computation of net income under the Revenue Act of 1913, 38 Stat. 114, provision was made for the deduction from gross income of "the net addition, if any, required by law to be made within the year to reserve funds." It also provided in the case of assessment insurance companies, that "the actual deposit of sums with State or Territorial officers, pursuant to law, as additions to guarantee or reserve funds shall be treated as being payments required by law to reserve funds."[5] The obvious

purpose of the section quoted was not to tax the additions to reserve or mortuary funds required by law to be held for the payment of policy claims. In every subsequent Revenue Act, Congress has adhered to that policy. The Revenue Act of 1921 embraced a new plan for the taxing of life insurance companies.[6] By § 244(a) it excluded underwriting (premium) income from the gross income of life insurance companies. It provided in § 244(b) that

"The term 'reserve funds required by law' includes, in the case of assessment insurance, sums actually deposited by any company or association with State or Territorial officers pursuant to law as guaranty or reserve funds, and any funds maintained under the charter or articles of incorporation of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan and not subject to any other use."

The provisions of § 244(b) were incorporated, without change, in § 202(b) of the Revenue Act of 1936.

Section 242 of the Revenue Act of 1921 provided:

"That when used in this title the term 'life insurance company' means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds."

The provisions of § 242 of the Revenue Act of 1921 were incorporated, without substantial change, in § 201(a) of the Revenue Act of 1936.

It is true that the emergency fund maintained by the Association pursuant to 36 O.S.A.1941 § 701, does not meet the technical requirements of a reserve fund such as is maintained by old line insurance companies. But Congress has never imposed technical requirements, such as actuarial computation, with respect to reserve funds of assessment companies. It is sufficient if

---

[3] 36 O.S.A.1941 § 694, in part provides: "Provisions applicable to mutual benefit associations.—The following provisions are made applicable to mutual benefit associations: * * * "(b) The by-laws shall provide for the calling of extra, increased or additional as-

sessments when in the opinion of the Board of Directors such is necessary."

[4] 36 O.S.A.1941 § 704.

[5] § II, G(b), Revenue Act of 1913, 38 Stat. 173, 174.

[6] See Helvering v. Oregon Mutual Life Ins. Co., 311 U.S. 267, 269, 61 S.Ct. 207, 85 L.Ed. 180.

it is a fund deposited with the state pursuant to law or maintained under the charter of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan and not subject to any other use.[7]

This view is supported by the legislative history of the amendment of § 201(c)(2) of the Internal Revenue Code, 56 Stat. 867, 868, by § 163 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 201(c)(2).

For the first time, in the Revenue Act of 1942, Congress defined reserves of life insurance companies, other than assessment companies. The 1942 Act, as it passed the House of Representatives, defined insurance reserves as follows:

"(2) Life insurance reserves.—The term 'life insurance reserves' means amounts computed or estimated on the basis of recognized experience tables with interest assumed as a factor which, with accretions from interest, are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued and contingent claims arising from life insurance contracts and noncancellable health and accident contracts. Such life insurance reserves, except in the case of ·policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, must also be required by law."

The Ways and Means Committee Report stated:

"Section 201(c)(2) is new and defines the term 'life insurance reserves.' The definition is substantially that contained for many years in the regulations with the addition that the reserves must be based on recognized experience tables, the health and accident insurance contracts must be noncancellable, and unpaid loss reserves on such health and accident contracts are included if computed on a discount basis."

When the bill was reported to the Senate, the definition of life insurance reserves was changed to read as follows:

"Life insurance reserves.—The term 'life insurance reserves' means amounts which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interest, and which are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued claims arising from life insurance, annuity, and noncancellable health and accident insurance contracts (including life insurance or annuity contracts combined with noncancellable health and accident insurance) involving, at the time with respect to which the reserve is computed, life, health, or accident contingencies. Such life insurance reserves, except in the case of policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation and *except as hereinafter provided in the case of assessment life insurance,* must also be required by law. *In the case of an assessment life insurance company or association the term 'life insurance reserves' includes sums actually deposited by such company or association with State or Territorial officers pursuant to law as guaranty or reserve funds, and any funds maintained under the charter or articles of incorporation of such company or association exclusively for the payment of claims arising under certificates of merbership or policies issued upon the assessment plan and not subject to any other use.*" (Italics supplied.)

On the floor of the Senate, the definition was amended by inserting after the word "incorporation" the following: "or association, or by-laws approved by State Insurance Commissioner."

The Senate Finance Committee Report explained the addition to the definition as follows:

"The House bill omitted to include in the term 'life insurance reserves,' in the case of an assessment company, the sums deposited with State officers as a guaranty or reserve funds and any funds maintained by the company exclusively for the payment of insurance written upon the assessment plan. *The committee bill restores this provision of existing law.*" (Italics supplied.)

[7] See General Life Insurance Co. v. Commissioner, 5 Cir., 137 F.2d 185, 189; Abilene Life Ins. Co. v. Commissioner, 5 Cir., 137 F.2d 191; Independent Life & Accident Insurance Co. v. Commissioner, 5 Cir., 138 F.2d 408; Lamana-Panno-Fallo Industrial Ins. Co., Inc., v. Commissioner, 5 Cir., 127 F.2d 56, 58; American Insurance Co. of Texas v. Thomas, 5 Cir., 146 F.2d 434, 437; Swedish Mission Friends' Aid Ass'n v. Commissioner, 12 B.T.A. 1152; Kaskaskia Life Insurance Co. v. Commissioner, 22 B.T.A. 210.

[1, 2] Under the Oklahoma statutes and the by-laws of the Association, interest earned by the emergency fund of the Association does not accrue to the fund and is no part thereof. Hence, use of the interest for expenses cannot be said to be a use of the fund. The narrow question presented is whether investing the fund, in order that it may earn interest which does not accrue to the fund, is a use of such fund other than for the payment of claims arising under certificates of membership or policies. It is our opinion that investment of the fund does not constitute a use within the meaning of § 202(b) of the Revenue Act of 1936. We think "use" means such an employment of the fund that will result in its impairment or its expenditure for purposes other than the payment of claims and not the normal investment thereof in accordance with state law.

█ It follows, we think, that the Association is a life insurance company and was entitled to the deduction allowed by § 203 (a)(2) of the Revenue Act of 1936.

Affirmed.

HUXMAN, Circuit Judge (dissenting).

I agree with that portion of the opinion which holds that the association is a life insurance company, but I cannot agree with that part of the majority opinion which holds that the funds in question are exempt under the provisions of Section 202(b) of the Revenue Act of 1936, because in my opinion the use to which the fund was put does not qualify it for such exemption.

It is not a question whether the assessments in controversy constitute reserve funds under Oklahoma law relating to assessment insurance companies. The question is whether they are exempt from taxation under the federal income tax law. Section 202(b), in the case of assessment insurance companies, exempts any funds maintained under the charter or articles of incorporation of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan, *and not subject to any other use.*[1]

The reason for this provision in the statute is quite apparent. Reserve funds do not belong to the company. They are the property of the policy-holders. The company is the mere custodian of such funds for the policy-holders. As stated by the Fifth Circuit in General Life Insurance Company v. Commissioner, 137 F.2d 185, 190: "In a sense, it partakes of the nature of an inchoate trust for the benefit of policyholders."

In construing a statute we should not adopt technical, strained, or unnatural meanings, but should adhere to the ordinary and generally understood meaning of the words used. When money is loaned out at interest, it certainly is used to earn income, and when the fund alone goes to the policy-holders and the interest earned by the use of the fund in making loans goes to the company, it cannot be said that the fund is used or employed solely for the payment of policy claims and that it is not used for any other purposes. It is used to earn interest which goes to and belongs to the company.

This construction is further compelled by the well recognized principle that tax exemption provisions of a statute are strictly construed against exemption and are liberally construed in favor of tax liability. To hold that these funds, which admittedly are used to earn income, which goes to the company, are used solely for the payment of death claims and have no other purpose, to me violates the simple, plain, and ordinary meaning of the words employed.

This construction would not work an irreparable detriment to the company. All it would have to do to bring itself within the beneficial provisions of the statute is to place the interest, as well as the principal of the fund, in the reserve and make it available to the policy-holders.

For the above reasons, I therefore respectfully dissent from that portion of the majority opinion which holds that the funds in question are exempt under Section 202 (b) of the Act.

---

[1] Emphasis supplied.