RESERVE LOAN LIFE INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21489, 29554, 32965.   Promulgated November 29, 1929.

*Frank G. West, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

362

364

TRAMMELL: In the original petitions filed in these proceedings and in the amended petitions filed prior to the hearing, the petitioner alleges that the respondent erred in eliminating the deductions taken for reserves to cover liability on outstanding coupons attached to guaranteed premium reduction policies. At the hearing the petitioner filed an amendment to its petitions, wherein it asked that it be allowed as deductions in determining net income the amounts paid and credited during the respective years to the holders of coupon policies, and stated that this was " rather an alternative contention " to that arising from the respondent's action in eliminating the deductions taken for reserves to cover liability on outstanding coupons attached to guaranteed premium reduction policies. In its brief the petitioner indicates that the issue raised by the amendment filed at the hearing is the chief issue and the other is the alternative issue.

Our consideration, however, will be directed first to the deductibility of the amounts representing reserves to cover liability on outstanding coupons attached to guaranteed premium reduction policies and which were eliminated by the respondent in determining the deficiencies for the respective years.

Section 244 (a) of the Revenue Acts of 1921, 1924, and 1926 defines the gross income of a life insurance company as " the gross amount

of income received during the taxable year from interest, dividends, and rents." Section 245 (a) of these Acts defines the net income of a life insurance company as the gross income less—

(1) The amount of interest received during the taxable year which under paragraph (4) of subdivision (b) of section 213 is exempt from taxation under this title;

(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, plus (in case of life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment .plan, continuing for life and not subject to cancellation) 4 per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only;

\*    \*    \*    \*    \*    \*    \*

The petitioner contends that the amounts eliminated by the respondent for the respective years as reserves to cover liability on coupons attached to guaranteed premium reduction policies are reserve funds required by law within the meaning of the term as used in the Acts.

During the taxable years here involved there was in effect in Indiana the following statute governing the maintenance of reserves by life insurance companies:

4687. *Valuation of policies—Deposits.*—10. As soon as practical after the filing of said annual statement of any company organized and doing business under the provisions of this act, in the office of the auditor of state he shall proceed to ascertain the net cash value of each policy in force on the thirty-first day of December immediately preceding, upon the basis of the American experience table of mortality and four per cent. interest, or actuaries' combined experience table of mortality and four per cent. interest, as adopted by the company and should any such company issue any policies based upon a higher standard than the above, such policies shall be valued according to such higher standard. For the purpose of making such valuation, the auditor of state may employ a competent actuary to do the same, who shall be paid by the company for which the services are rendered; but nothing herein shall prevent any company from making said valuation herein contemplated, which may be received by the auditor of state upon such proof as he may determine. Upon ascertaining, in the manner above provided, the net cash value of all policies in force in any company organized or doing business under this act, the auditor of state shall notify said company of the amount thereof, and within sixty days after the date of such notification, the officers of such company shall deposit with the auditor of state, for the security and benefit of all its policy holders, an amount, which together with the sum already deposited with said officer and such additional sums as may be deposited by said company with other states or governments pursuant to the requirements of the laws of such other states or governments in which said company is doing business, shall not be less than the amount of such ascertained valuation of all policies in force, in the securities described in section twenty-two (22) of this act, or in certificates of deposit in any solvent bank or trust company, or satisfactory

evidences of ownership of unencumbered, improved real estate, as may be lawfully acquired by such company under the provisions of this act, at such value as may be determined upon by two disinterested appraisers residing in the county in which the real estate is situate; such appraisers to be approved by the auditor of state. Such real estate shall not be sold or encumbered, without the consent of the auditor of state, unless securities of equal value as herein required be deposited with the auditor of state in lieu thereof. But no company organized under this act shall be required to make such deposit until the net cash value of the policies in force as ascertained by the auditor of state, exceeds the amount deposited by said company under sections five (5) and six (6) hereof: * * * *Provided*, That any policy hereafter issued may provide for not more than one year's preliminary term insurance and if the premium charged for term insurance under a limited payment life preliminary term policy providing for the payment of less than twenty annual premiums or under an endowment preliminary term policy, exceeds that charged for life insurance under twenty payment life preliminary term policies of the same company, the reserve thereon at the end of any year, including the first, shall not be less than the reserve on a twenty payment life preliminary term policy issued in the same year at the same age, together with an amount which shall be equivalent to the accumulation of a net level premium sufficient to provide for a pure endowment at the end of the premium payment period equal to the difference between the value at the end of such payment period of such a twenty payment life preliminary term policy and the full reserve at such time of such limited payment life or endowment policy. All policies of life insurance including policies issued on a reducing premium plan or a return premium plan, shall be valued according to the provisions of this act: *And provided further*, That in every case in which the actual premium charged for an insurance is less than the net premium for such insurance, computed according to its respective table of mortality and rate of interest, the company shall also be charged with the value of an annuity, the amount of which shall be equal to the difference between the premium charged and that required by the rules above stated, and the term of which in years shall equal the number of future annual payments due on the insurance at the date of valuation. The foregoing provisions of this section for the valuation of policies shall apply to life insurance policies only. Insurance against permanent mental or physical disability resulting from accident or disease, or against accidental death, combined with a policy of life insurance, shall be valued on a basis of fifty (50) per centum of the additional annual premium charged therefor. The auditor of state, for the purpose of ascertaining the solvency of any company, may at any time during the year proceed to ascertain the net cash value of the policies of any company as hereinbefore provided, and when the value is so ascertained, require such company within sixty days to make deposit, in securities as herein provided, of an amount equal to the total ascertained net value of the policies of any such company. (Burns Annotated Indiana Statutes, Revision 1914, vol. 2, pp. 755, 756.)

There was also in force in Indiana during the taxable years the following statutory provision:

4622a. *Life policies, contents, Act of 1909.*—5. From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state or be issued

by a life insurance company organized under the laws of this state, unless the same shall provide the following:

\* \* \* \* \* \* \*

(7) A table showing in figures the loan values and the cash, paid-up and extended insurance options upon surrender, or available under the policy each year, upon default in premium payment, during at least the first twenty years of the policy, beginning not later than the end of the third policy year, which values shall be equal to the full reserve on the policy, less not to exceed two and one-half per centum of the sum insured; following this table there shall be a clause specifying the mortality table and rate of interest adopted for computing the reserve and specifying the basis for the values and options after the period covered by the table. This provision shall not apply to term policies nor to any form of paid-up insurance issued or granted in exchange for lapsed or surrendered policies. (Burns Annotated Indiana Statutes, Revision 1914, vol. 2, pp. 728, 729.)

The petitioner is a stock life insurance company and the policies here involved are nonparticipating policies. The policyholders, therefore, are not permitted to share in the profits of the company. Two typical policies of the petitioner were introduced in evidence. One is a life payment policy issued for a stipulated premium during the life of the insured. The policy, however, provides for a substantially smaller annual premium after all the coupons attached to it have matured. In addition to the options set out in our findings of fact, the policy contains an "annuity option" which provides that after 20 years from the date of the policy after all premiums have been paid and the coupons have not been employed for any other purpose the company will, upon request by the insured, convert the coupons into an annual life annuity of a stated amount. The other policy is a limited payment life policy with a stipulated premium payable for 20 years or until the prior death of the insured. In addition to the options set forth in our findings of fact, the policy provides that should the insured elect to pay all premiums without using the coupons in reduction thereof, and to leave with the petitioner the amount of all coupons, the company guarantees the policy shall become paid-up in 15 years. It was with respect to these and other various options and provisions that the petitioner was required to put on deposit the amounts here involved to meet its liability on the policies and coupons attached.

In *Standard Life Insurance Co. of America*, 13 B. T. A. 13, we considered the question of whether the reserve funds a life insurance company was required to keep to meet its liability on coupons on guaranteed premium reduction policies were a part of the "reserve funds" of the company for the purpose of computing the legal deduction from gross income under section 245 (a) (2) of the Rev-

enue Acts of 1921 and 1924. After considering the question at some length, we decided that they were. There we said:

The essence of the question before us is whether the obligation of the petitioner with respect to the unsurrendered coupons shown upon its annual statements for the years in question on 1 ne 22 of the convention form of report is a part of its "reserve funds" or simply a mere liability of the company. A mere accrued liability does not constitute a part of the reserve funds of an insurance company. The Supreme Court has pointed out in *McCoach* v. *Insurance Company of North America, supra*, that the term "reserve funds" as applied to a fire insurance company has "reference to the funds ordinarily held as against the contingent liability on outstanding policies." This definition is not, however, applicable to the reserve funds of a life insurance company. A life insurance company has an absolute liability in respect of every policy so long as premiums are paid thereon. The liability is not contingent. The only uncertainty in the case of the life insurance company is the date upon which the company will have to pay a loss under a policy. The Supreme Court has pointed out that the term "reserve funds" as applied to life insurance companies has reference to "something reserved from premiums to meet policy obligations at maturity." The amounts claimed by the petitioner to represent reserve funds, including the obligation of the petitioner in respect of unsurrendered coupons, meets the test of this definition. It is true that the policyholder may demand the payment of the face of a matured coupon at any time together with interest thereon. If he does that the company is simply paying off a policy obligation and the policyholder has surrendered a part of his policy. * * * We think, however, that the theory that the amount of the premium covered by the premium reduction coupon is simply a deposit of money with the insurance company is not the correct theory in the case. The policyholder has numerous options with respect to the amount represented by the premium reduction coupon. The insurance company is bound to hold an amount in reserve to meet all its obligations upo nthe policy. We think that in truth and in fact there can be no valid distinction between the amount reserved by the insurance company to meet its liability in respect of the particular premium represented by the premium reduction coupon and the balance of the premium.

We think the foregoing is equally applicable to the instant case. In view of the provisions of the Indiana statute and of the requirements of the Insurance Department of that State, we are of the opinion that the amounts reserved by the petitioner for the respective years to meet its liability on outstanding coupons attached to guaranteed reduction policies are a part of the "reserve funds" of the petitioner within the meaning of section 245 (a) (2) of the Revenue Acts of 1921, 1924, and 1926.

With respect to the contention that it be allowed as deductions the amounts of interest paid and credited during the respective years to holders of coupon policies, the petitioner characterizes the coupons as creating a mere debtor and creditor relationship. As pointed out in *Standard Life Insurance Co. of America, supra*, the payment of the face of a matured coupon, together with the interest thereon,

constitutes the paying off by the company of a policy obligation and the surrender by the policyholder of a part of his policy. This being true, the amounts paid or credited by the petitioner during the respective years to holders of coupon policies do not, in our opinion, constitute interest paid or accrued on indebtedness within the meaning of section 245 (a) (8) of the applicable Revenue Acts. The contention, therefore, is denied.

Under the provisions of section 245 (a) (2) of the applicable acts quoted above, the respondent allowed as deductions for the years here involved only the excess of the 4 per cent of the mean of the reserve funds required by law over the tax-exempt interest. The petitioner contends that this is erroneous in view of the decision in *National Life Insurance Co.* v. *United States*, 277 U. S. 508. The case there considered by the court arose under the 1921 Act, the pertinent provision of which is the same in the Acts of 1924 and 1926. The court said:

Considering what has been said, together with the saving clause just quoted, and the manifest general purpose of the statute, we think that provision of the Act which undertook to abate the 4% deduction by the amount of interest received from tax exempt securities cannot be given effect as against petitioner under the circumstances here disclosed. It was unlawfully required to pay $92,490.20 and is entitled to recover.

We think that under the above decision this contention of the petitioner must be sustained. *Midland National Life Insurance Co.*, 14 B. T. A. 200.

The petitioner contends that the inclusion by it in its gross income of the accrued and unpaid interest on mortgages on farms to which it acquired title was erroneous and that the amount should be eliminated.

While there is no evidence as to whether the farms were acquired by the foreclosure of mortgages, the petitioner and the respondent state in their briefs that they were acquired in this manner, and for the purpose of our discussion will be so considered. In *John Hancock Mutual Life Insurance Co.*, 10 B. T. A. 736, we had before us a question in some respects similar to that presented here. There the property sold at foreclosure was purchased by the taxpayer and another, who were the holders of the mortgage. Their bid was the highest and was for the principal sum of the mortgage. At the time of foreclosure there was due certain accrued and unpaid interest on the mortgage. There were also certain expenses incident to the foreclosure and sale of the property. The respondent sought to apportion the net purchase price of the property between the principal and the interest in the proportion that each bore to the

total of the two. We there held that, since the net proceeds of the foreclosure were less than the principal, the taxpayer had suffered a loss of part of its principal and that no part of the accrued and unpaid interest constituted income to the taxpayer.

In the instant case the record is silent as to whether the bid prices at which the petitioner acquired the farms were for the principal and the interest of the mortgage or for the principal only, or for less than the principal or at prices in excess of principal and interest. The facts show that upon acquiring title to the farms the petitioner in its books of account transferred these mortgage loan investments from its mortgage loan account to an account of real estate owned, for the full amount then invested in the respective mortgage loans, including the accrued and unpaid interest here involved, and as a part of the transaction credited its income account of interest on mortgage loans with the amount of interest then accrued and unpaid. In the absence of evidence showing at what prices the petitioner acquired the respective farms at foreclosure, we are not in a position to hold that the amounts of interest here in controversy were improperly included in the petitioner's income for the respective years.

The petitioner contends that the amounts of interest for the respective years should not be included in income, as it will ultimately have losses on these transactions which it can never deduct. In support of its contention as to the ultimate losses, the petitioner points to the disposition being made of the Kirkpatrick farm, which was transferred in 1926 from the mortgage loan account to the account of real estate owned at an amount of $5,359.66, of which $359.66 represented interest and the remainder represented principal. From the evidence it appears that some time during the early part of 1929 the petitioner contracted to sell the farm for $1,800. As indicated above, it is what occurred during the years in which petitioner took title to the farms that governs the disposition of the question as to the taxability of the amounts of interest here being considered, and not what occurs in 1929 or later years.

The petitioner contends that the respondent erred in eliminating from its income for 1924 the amount of $3,000, representing the rental value for three months of the building occupied by it as a home office for that period and in the disallowance of the deduction of $5,642.15 representing amounts expended in connection with the maintenance and occupancy of the building and for taxes paid on the home office property for 1924. The petitioner contends that it should be permitted either (1) to eliminate the amount of $3,000 as part of gross income and deduct three-fourths of the $5,642.15

representing the fractional part of the year when the building was not occupied, it having been demolished during such period, or (2) there should be included in income the amount of $3,000 and a deduction allowed for the taxes and expenses aggregating $5,642.15, thereby reducing the net income determined by the respondent by the difference between the two items or $2,642.15. Among the deductions provided in section 245 (a) of the Revenue Act of 1924 is the following:

(6) Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company, not including taxes assessed against local benefits of a kind tending to increase the value of the property assessed, and not including any amount paid out for new buildings, or for permanent improvements or betterments made to increase the value of any property.

Paragraph (b) of section 245 provides:

(b) No deduction shall be made under paragraphs (6) * * * of subdivision (a) on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall not be less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied.

In *Independent Life Insurance Co. of America*, 17 B. T. A. 757, we considered the validity of section 245 (b). We there held invalid the requirement that no deduction shall be made of taxes, expenses and depreciation in respect of real estate occupied by the owner unless the rental value of such real estate be included in gross income in computing taxable net income. We think our decision in that case is applicable and controlling here. As paragraph (a) (1) of section 245 of the Act provides for the deduction of taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company and as paragraph (b) of the same section is inoperative, we think the petitioner is entitled to the deduction of $5,642.15 representing taxes and other expenses paid during the taxable year, without including the $3,000 or any other amount representing the rental value of the space occupied by it. Accordingly, we think the respondent properly eliminated the $3,000 from the petitioner's income, but erroneously disallowed the deduction of $5,642.15.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH dissents on the fourth point.