ATLAS LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40544, 40751, 67199. Promulgated January 16, 1934.

*Earl W. Shinn, Esq.*, for the petitioner.
*Maxwell M. Mahany, Esq.*, for the respondent.

OPINION.

MATTHEWS: The first issue for determination is whether there was error in the respondent's exclusion from the " reserve funds required by law", in the calculation of the petitioner's gross income, of amounts held by petitioner in its reserves to satisfy its obligations on coupons on certain policies of life insurance known as guaranteed premium reduction policies, where premium reduction credits evidenced by coupons had been left with the petitioner to accumulate in accordance with the provisions of the policies. The applicable statutory provisions are section 245 (a), identical in the Revenue Acts of 1924 and 1926, and section 203 (a) (2), Revenue Act of 1928.

This issue presents no novel question. It has already been carefully considered and passed upon by this Board in *Standard Life Ins. Co. of America,* 13 B.T.A. 13; affd., 47 Fed. (2d) 218; *Reserve Loan Life Ins. Co.,* 18 B.T.A. 359; *Western Union Life Ins. Co.* v. *Commissioner,* 61 Fed. (2d) 207, affirming, Board's memorandum opinion entered March 6, 1932; *Farmers Life Ins. Co.,* 27 B.T.A. 423; and *Missouri State Life Ins. Co.,* 29 B.T.A. 401.

The instant case is in no important respect different from the situation considered in the *Standard Life Ins. Co.* case *supra.* Here the petitioner issued a nonparticipating policy bearing coupons which might be used when mature for payment of the premiums, paid-up additions to the policy, or redeemed in cash. The coupons bore interest after maturity, and, if there had been default in payment of premiums, might also be used to carry continued term insurance. The National Convention of Insurance Commissioners has a concerted practice, adopted by the Insurance Commissioner of Oklahoma, requiring the insurer to exact a higher premium on such coupon policies and to carry a proportionately higher reserve to meet these coupon obligations, both principal and interest. The petitioner did carry such additional reserves in the years in question and reported them as a special reserve in its annual report. We have no doubt that under local law (see Bunn's Comp. Okla. Stat., Ann., 1921, vol. 2, p. 2417; §§6710, 6711), therefore, that these reserves represented undischarged obligations of petitioner and must have been set up to meet them.

In the *Standard Life* case we reviewed the authorities on the question whether such reserves came within the meaning of "reserves required by law," as used in the revenue acts, so that it is unnecessary to discuss it here. On the authority of that case, therefore, this issue is decided for petitioner.

We now pass to the issue with respect to the rental value of space used by petitioner and the rentals received by petitioner from the office building which it built on land leased for 99 years from the Tulsa board of education, the lease having been assigned by Sinclair, the original lessee, to petitioner with the lessor's consent.

(a) The respondent included in petitioner's gross income for 1924, 1925, 1926, and 1927 amounts equivalent to the rental value of space occupied by the petitioner in its own office building. At the hearing the parties stipulated these amounts and the amounts received by petitioner as rent from other tenants of the building, and respondent further stipulated that the latter, less deductions, were in excess, for each of the several years involved, of 4 percent of the book value of the building.

In his brief respondent waives his claim that petitioner is required to include in income the rental value of the space occupied by

it, in order to claim deduction for taxes, depreciation, etc., on the building, for the reason that the rent received from the other tenants, less deductions, is more than 4 percent of the building's book value. This makes it unnecessary to consider the question on authority of our decision in *Independent Life Ins. Co.*, 17 B.T.A. 757; affd., 67 Fed. (2d) 470, or to consider the arguments advanced by petitioner.

(b) Petitioner contends that the lease was an instrumentality of the state, that the building became a part of the leased land and, therefore, that the rent received from its tenants was income from a state instrumentality and is impliedly exempt from taxation under the decision of the Supreme Court in *Burnet* v. *Coronado Oil & Gas Co.*, 285 U.S. 393.

Respondent contends that the *Coronado* case does not govern, for the reason that the land here in question was not a part of the lands lying in Oklahoma territory granted by the United States to the state to be forever held for the use and benefit of the public schools of the state; that the building from which the rents were derived was private property of petitioner, erected by petitioner with its money, and, therefore, that the rents from the building are taxable income to the petitioner.

The *Coronado* case involved an oil and gas lease on school lands which had been granted by the United States to the state for the benefit of the common schools. Under the rule previously approved in *Gillespie* v. *Oklahoma*, 257 U.S. 501, the Court held that the lease was an instrumentality of the state for the purpose of carrying out her duty in respect to public schools; that to tax the income of the lessee arising therefrom would amount to an imposition upon the lease itself. However, in applying the rule approved in the *Gillespie* case, which involved the taxation by the state of income derived from the sale of oil acquired under an oil and gas lease on Indian lands, the Court said: " We are disposed to apply the doctrine of *Gillespie* v. *Oklahoma* strictly and only in circumstances closely analogous to those which it disclosed."

Since the *Coronado* decision, the Supreme Court has, in *Burnet* v. *Jergins Trust Co.*, 288 U.S. 508, again had the question of the taxability of income derived by a lessee from an oil and gas lease on lands owned by a political subdivision of a state. Although in that case the lands had been held since 1911 and used by the city of Long Beach, California, for water supply and other purposes, the decision of the Court was not that supplying water was not a governmental function, but that the subject of the tax, namely, the net income of the trust whose operations were carried on in a private capacity, was so remote from any governmental function as to render the effect of the exaction inconsiderable as respects the

activities of the city. In holding that the *Gillespie* and *Coronado* case were not authorities binding on it, the Court said:

In both of those cases the sovereign was acting as the trustee of an express trust with regard to the lands leased. In both the burden upon the public use was more definite and direct than in the present case. As said in the *Coronado* case, the doctrine of *Gillespie* v. *Oklahoma* is to be applied strictly and only in circumstances closely analogous to those which it disclosed. The decisions relied on can not be held to be authority upon the facts presented by this record.

⁻ The facts in the instant case are even less analogous to those of the *Coronado* case than were the facts of the *Jergins* case.

The income here in question is the rent received by petitioner from tenants of its home office building, which was erected with its own money on land leased from the Tulsa board of education for 99 years.

The leased premises were not a part of the land which was granted to Oklahoma by the United States, upon its admission as a state, for the use and benefit of the public schools of that state, nor is it land which was purchased with part of the $5,000,000 which was given to the state to be held and invested for the use and benefit of the public schools. It was purchased by the town of Tulsa from the Creek Nation and thereafter deeded to the board of education. Hence, in leasing to petitioner a part of the land purchased, the state, acting through the board of education, was not acting as trustee of an express trust with regard to the land leased, as it was in the *Coronado* case, *supra*, but as owner.

In the *Coronado* case the lease was not for the use of the premises for a specified rental, but one involving the depletion of a reserve. In other words, a lease under which the state and taxpayer shared the proceeds of operation. In the present case the state, through the board of education, has merely sold to this taxpayer the right to use the land for a specified period in consideration of certain payments to be made and covenants performed. The obligation of the lessee and the return to the state do not depend in any way upon the operations of the lessee. The rental specified is due and payable whether or not any space in the building is rented. The rental is fixed at an amount equal to 6 percent of the value of the premises, exclusive of improvements, and is payable annually in advance.

The terms of the lease indicate clearly that as between lessor and lessee the building was for all purposes to be treated as property of the lessee until termination of the lease, at which time the lessor agreed to purchase the building at its then cash value. Taxes were paid by petitioner on the building. The amount of such taxes is not shown by the evidence, but the parties stipulated the amount covering taxes, depreciation, and other deductible expenses properly

chargeable against the rent received. The statutes of Oklahoma provide, in chapter 57, Landlord and Tenant:

SEC. 7369. *Taxation of improvements.*—All improvements put on leased lands, that do not become a part of the realty, shall be assessed to the owner of such improvements as personal property; and the taxes imposed on such improvements shall be collected by levy and sale of the interest of such owner, the same as in all other cases of the collection of taxes on personal property.

And in chapter 84, Revenue and Taxation, it is provided:

SEC. 9583. *Personal property.*—Personal property, for the purpose of taxation, shall be construed to include:

\* \* \* \* \* \* \*

Second. All improvements made by others upon lands, the fee of which is still vested in the United States or this State; all improvements, including elevators and other structures, upon lands the title to which is vested in any railway company or other corporation whose property is not subject to the same mode and rule of taxation as other property.

Notwithstanding that in legal theory the building became a part of the land, it was, for all practical purposes, owned by petitioner. It was erected with petitioner's money and represents an investment of the petitioner. It was used by petitioner as its home office building in carrying on its business. One of the necessary activities of an insurance company is the investment of its funds. That portion of the building not needed for its home office it rented to others, thus earning an income on such investment. The state has no more interest in the investment income of petitioner from its building, merely because it happens to be on land leased by the state to petitioner for 99 years, than it has in the income received by petitioner from its other investments or from its business.

We think the rule of the Supreme Court in *Thomas* v. *Gay*, 169 U.S. 264, holding the Oklahoma tax on cattle grazing in Indian lands valid, is applicable here. The Court said, at page 273:

But it is obvious that a tax put upon the cattle of the lessees is too remote and indirect to be deemed a tax upon the lands or privileges of the Indians.

And at page 275:

The taxes in question here were not imposed on the business of grazing or on the rents received by the Indians, but on the cattle as property of the lessees, and, as we have heretofore said that as such a tax is too remote and indirect to be deemed a tax or burden on interstate commerce, so it is too remote and indirect to be regarded as an interference with the legislative power of Congress.

This case was relied on by the state in the *Gillespie* case, *supra*, and Mr. Justice Holmes, in distinguishing this case said:

\* \* \* Whether this property [income from oil and gas leases on Indian lands] could be taxed in any other form or not, it cannot be reached as profits or income from leases such as those before us. The same considerations that invalidate a tax upon the leases invalidate a tax upon the profits of the leases,

and stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards. *Weston* v. *Charleston*, 2 Pet. 449, 468. The taxation of cattle grazing in Indian lands held valid in *Thomas* v. *Gay*, 169 U.S. 264, 273, obviously is more remote. * * *

Under the principle of *Thomas* v. *Gay, supra,* the state could tax a building erected by a lessee on leased Indian lands, and does under section 9583 Okla. Stat., *supra,* and also the income received by such lessee from tenants in the building. The same rule would apply conversely to a tax by the Federal Government on the income from a building erected on state lands.

A tax on the rents received by petitioner from its tenants is no hamper upon the efforts of the state, through the board of education, to make the best terms it can. Like the state tax on cattle held valid in *Thomas* v. *Gay, supra,* it is too remote and indirect to interfere with the governmental functions of the state acting through the board of education.

Under the circumstances here present, we hold that the rent was not derived from the lease with the state, but from the building which was property of petitioner and is taxable to petitioner. *Burnet* v. *Jergins Trust, supra.* If it be argued that a portion of the rent received from tenants of the building should be apportioned to the lease with the board of education, it is answered that all rent received in excess of that paid to the board of education represents a profit in the disposition of the lease for the time being, which is taxable under *Willcuts* v. *Bunn,* 282 U.S. 216, and *Marland* v. *United States,* 53 Fed. (2d) 907; certiorari denied, 290 U.S. 658.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*