HOBART IRON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33413.   Promulgated January 23, 1934.

*Ellsworth C. Alvord, Esq., John B. Putnam, Esq.,* and *Ralston R. Irvine, Esq.,* for the petitioner.
*J. K. Polk, Esq.,* and *Harold F. Noneman, Esq.,* for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1923 of $652.69. The petitioner claims that there is no deficiency but that the tax has already been overpaid and that it is entitled to a refund. The petition alleges that the respondent erred in failing " to exclude from net income in the year 1923 the

amount of net income derived by the taxpayer from the operation of its mine, which property is owned in fee by the State of Minnesota."

The petitioner is a corporation organized and existing under the laws of the State of Minnesota, with its principal office in Duluth.

Upon its admission into the Union the State of Minnesota acquired title to certain lands, the income from which was to go to the support of a university. Some of the lands thus acquired were mineralized and the state leased these lands to certain individuals who, under the terms of the lease, were required to pay royalties upon the production of ores to the state. On January 1, 1902, the state issued to Francis W. Sullivan and James T. Hale a mineral lease, described as "Contract #456" upon certain land upon which later the Majorca Mine was located. The lease ran for a period of 50 years from January 1, 1902, and was in the statutory form provided by section 4079 of chapter 38 of the Minnesota Statutes of 1894. By the terms of the lease the lessees agreed to pay a royalty to the state of 25 cents on each ton of ore mined and taken away. For the first five years of the term of this lease the lessees agreed to pay a minimum royalty of $100 per year and thereafter a minimum royalty of $1,250 per year. As provided by the Minnesota statute, the lease contained the following provision:

The covenants, terms and conditions of this lease shall run with the land and be in all respects binding and operative upon all sublessees and guarantees [grantees] under the parties of second part.

On May 1, 1907, Sullivan and Hale entered into a contract with the petitioner whereby they leased to the petitioner for a term of 44 years commencing May 1, 1907, the land covered by "Contract #456." This lease was also prepared in statutory form in so far as applicable. Under the terms of this agreement the petitioner agreed to pay to Sullivan and Hale a royalty of 10 cents on each ton of iron ore mined and taken away and also to pay to the State of Minnesota such royalty and other payments as were provided in "Contract #456."

The agreement between Sullivan and Hale and the petitioner contained the following provision:

The Iron Company expressly admits that it accepts this lease subject to the terms and conditions of said state mineral contract [Contract #456].

Since May 1907 the State of Minnesota has at all times treated the petitioner as being directly responsible to it and in this capacity petitioner has dealt directly with the State of Minnesota as the lessor.

In 1923 the petitioner sold 151,743 tons of iron ore from the Majorca Mine and sustained deductible depletion on that mine of $52,184.42.

In addition to the Majorca Mine the petitioner operated another mine on the Masaba Range, known as the Elba Mine, which was located approximately 25 miles from the Majorca Mine. The Majorca Mine is an open-pit operation, while the Elba Mine is an underground operation. The two mines required separate local management, but they have had a common local and district agent management. In respect to the Elba Mine there was an ore reserve on March 1, 1913, of 1,190,591 tons having a then present value to the petitioner of $722,454.33. From the Elba Mine the petitioner sold 78,440 tons of ore in 1923 and sustained depletion on that mine of $30,784.91.

The petitioner had a net income for 1923, as determined by the respondent, of $231,402.14 of which it is stipulated that $184,380.90 was derived from the operation of the Majorca Mine and $47,021.24 from the operation of the Elba Mine.

The petitioner contends that its net income from the operation of the Majorca Mine in 1923 in the amount of $184,380.90 is exempt from income tax and that its only taxable net income is the $47,021.24 derived from the operation of the Elba Mine. This claim is made under the decision of the Supreme Court in *Burnet* v. *Coronado Oil & Gas Co.*, 285 U.S. 393, in which the Supreme Court held that a lessee's income from the sale of oil and gas produced under lease of school lands belonging to the State of Oklahoma was not taxable by the Federal Government, since the lease constituted a governmental instrumentality of the state. The petitioner argues that the facts in that case are almost identical with those which obtain in the proceeding at bar and that a like conclusion must be reached herein. Its contention is that the lease granted by the State of Minnesota to Sullivan and Hale was an instrumentality of the state for the purpose of realizing income from its state school lands; that the contract entered into between Sullivan and Hale and the petitioner on May 1, 1907, if not an assignment of the lease owned by Sullivan and Hale, in legal effect made the petitioner the lessee of the state lands and consequently that that contract was an instrumentality of the State of Minnesota for the purpose of deriving income from its school lands.

The respondent denies that the petitioner in 1923 occupied the same relationship to the State of Minnesota that Sullivan and Hale would have occupied if they had operated the mine in 1923. He contends that the contract of May 1, 1907, was not in legal effect an assignment of the lease and that there was no privity between the petitioner and the State of Minnesota with respect to the lands demised by the state to Sullivan and Hale; that the petitioner was merely a sublessee of Sullivan and Hale; and that it is liable to income tax in respect of its entire net income for the year 1923.

It will be noted from our findings that whereas Sullivan and Hale held the lease upon the demised premises for 50 years from January 1, 1902, or from that date to January 1, 1952, the contract between Sullivan and Hale and the petitioner was for a period of 44 years from May 1, 1907, or from that date to May 1, 1951. There was, therefore, a period from May 2, 1951, to January 1, 1952, for which petitioner had no lease upon the demised properties. In other words, there was a reversion in Sullivan and Hale for such period.

In the light of these facts we think it clear that the petitioner operated the demised properties during the taxable year as the sublessee of Sullivan and Hale. Cf. *Craig* v. *Summers*, 47 Minn. 189; 49 N.W. 742; *Cameron Tobin Baking Co.* v. *Tobin*, 104 Minn. 336; 116 N.W. 639; *Davidson* v. *Minnesota Loan & Trust Co.*, 158 Minn. 411; 197 N.W. 833; and Thompson on Real Property, vol. 2, § 1372.

The petitioner contends that the State of Minnesota dealt with it during the taxable years in question as the lessee of its lands. It calls attention to the decision of the Supreme Court of Minnesota in *State* v. *Hobart Iron Co.* (1919), 143 Minn. 457; 172 N.W. 899, in which it appears that the state sued the petitioner to recover a balance of $1,401.75 royalty due under "Contract #456." Both of the agreements involved in this proceeding were before the court. The Supreme Court of the State of Minnesota held that the petitioner was responsible directly to the state under "Contract #456." In the course of its opinion the court stated:

The defendant operates the Majorca Mine under a lease from the state. The lease was granted to its assignors in 1902, and is in statutory form. Laws 1895, c. 105, § 4; (G.S. 1913, § 5315). It recites that the premises are leased "for the purpose of exploring for, mining, taking out and removing therefrom, the merchantable shipping iron ore, which is, or which hereafter may be found," etc. The lessee agrees to pay "for all the iron ore mined and removed * * * at the rate of 25 cents per ton for all iron ore so taken out, mined and carried away." * * *

We are of the opinion that this determination of the Supreme Court of the State of Minnesota is not determinative of the issue before us. As a sublessee the petitioner could be held liable for the payment of royalty to the State of Minnesota without there having been any privity of contract between the state and the petitioner. This fact is recognized in Thompson on Real Property, vol. 2, pp. 492–493, where it is stated:

It is well settled that the common law gives the lessor no right of action on any of the covenants of the original lease against the sub-tenant or under-lessee, because there is no privity of contract between the lessor and the sub-lessee and because there is no privity of estate. There is no privity between the landlord and sub-tenant, *arising merely from that relation* as will subject the sub-tenant to liability for the debt of the tenant for rent. * * * [Italics supplied.]

However, where the sublessee assumes the covenants of the lease the lessor acquires a right of action against the sublessee. This was held in *In re Assignment of Dickinson Co.*, 72 Minn. 483; 75 N.W. 731, in which the Supreme Court of the State held:

> * * * We have now before us the agreement between Dickinson and Cunnington and the Dickinson Company, by the terms of which the latter assumed and agreed to perform all the covenants of the lease, including the payment of rent to the end of the term. Under the reported decisions of this court, Fitterling, to whom the rent was due and payable, could maintain an action on this covenant in his own name, and for his own benefit. *This is decisive of the case, without considering the question of whether the Dickinson Company was assignee of the lease, or an undertenant.* [Italics supplied.]

In *Burnet* v. *Coronado Oil & Gas Co.*, *supra*, the Supreme Court stated:

> When Oklahoma undertook to lease her public lands for the benefit of the public schools she exercised a function strictly governmental in character. * * *
>
> Here the lease to the respondent was an instrumentality of the state for the purpose of carrying out her duty in respect of public schools. To tax the income of the lessee arising therefrom would amount to an imposition upon the lease itself.

If the petitioner conducted mining operations under a lease directly from the State of Minnesota its claim that it was immune from Federal income taxation would appear to be ruled by the decision in *Burnet* v. *Coronado Oil & Gas Co.*, *supra*. It should be borne in mind, however, that the doctrine of implied immunity from Federal taxation has its "inherent limitations." *Fox Film Corp.* v. *Doyal*, 286 U.S. 123. The application of such doctrine is limited to those agencies "through which either government immediately and directly exercises its sovereign powers." *Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514. In *Burnet* v. *Jergins Trust*, 288 U.S. 508, the Supreme Court had before it the question of the taxability of income derived by a lessee from an oil and gas lease on lands owned by a political subdivision of the State of California. The Court, referring to *Burnet* v. *Coronado Oil & Gas Co.*, *supra*, and to *Gillespie* v. *Oklahoma*, 257 U.S. 501, stated:

> * * * In both of those cases the sovereign was acting as the trustee of an express trust with regard to the lands leased. In both the burden upon the public use was more definite and direct than in the present case. As said in the *Coronado* case, the doctrine of *Gillespie* v. *Oklahoma* is to be applied strictly and only in circumstances closely analogous to those which it disclosed. The decisions relied on cannot be held to be authority upon the facts presented by this record.

In the light of what has been said we are of the opinion that the agreement between Sullivan and Hale and the petitioner by which it operated the Majorca Mine in 1923 was not an instrumentality of the

State of Minnesota and, consequently, that the petitioner is not exempt from income tax in respect of income derived from the operation of that mine. *Wanless Iron Co.*, 29 B.T.A. 834. Cf. *Atlas Life Ins. Co.*, 29 B.T.A. 750.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, ARUNDELL, MURDOCK, and GOODRICH concur in the result.